UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Robert P. Gallagher, et al.**

   **v.**

**Funeral Source One Supply
and Equipment Co., Inc., et al.**

Civil No. 14-cv-115-PB
Opinion No. 2015 DNH 033

MEMORANDUM AND ORDER

Robert Gallagher and his firm, Instrument Design and
Manufacturing Co., sued Funeral Source One Supply and Equipment
Co., Inc. and Affordable Funeral Supply, LLC for patent
infringement and violation of the New Hampshire Consumer
Protection Act (the "CPA").  Defendants responded with several
counterclaims.  This Memorandum and Order addresses plaintiffs'
motion to dismiss defendants' CPA counterclaim.

## I.   BACKGROUND

Gallagher[1] holds a patent for a needle injector protection
device.  His complaint asserts that defendants infringed the
patent and violated the CPA by advertising and selling

---

[1] Gallagher is the sole owner of Instrument Design and
Manufacturing Co., Inc.  I refer to plaintiffs collectively as
"Gallagher."

counterfeit copies of his patented device.

Defendants responded with several counterclaims, one of which alleges that Gallagher violated the CPA by bringing the action "to impermissibly gain a competitive advantage against [the defendants, both] competitor[s of Gallagher]."  Doc. Nos. 12 at 12, 13 at 12.  Defendants support their counterclaim by referring to a settlement letter that Gallagher allegedly sent to them on June 3, 2014, after he had filed his complaint. In the letter, Gallagher demanded the names and contact information for each of defendants' purchasers, the names of defendants' owners and investors, and a payment of $20,000 plus all legal expenses.  He also asked for all information in the defendants' custody related to sales of the counterfeit injector needle drivers through online resellers.  Finally, he insisted that the defendants allow him to place an advertisement in a trade publication asking any purchaser of a counterfeit injector needle driver "to come forward with any information they may have."  Doc. Nos. 12 at 12, 13 at 12 (emphasis omitted).

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In deciding a motion to dismiss, I employ a two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks, and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at

3

555 ("Factual allegations must be enough to raise a right to
relief above the speculative level . . . .").


### III.  ANALYSIS

Gallagher presents two arguments in support of his motion
to dismiss.  First, he argues that the CPA counterclaim is
invalid because it depends on the June 2014 settlement letter,
which, he maintains, is inadmissible under Federal Rule of
Evidence 408.  See Doc. No. 20-1.  In the alternative, he argues
that the counterclaim is "essentially [a] malicious prosecution
claim[] that cannot be brought until the underlying action is
resolved."  Id. at 3 (internal quotation omitted).  Neither
argument is persuasive.

### A.   Rule 408

Gallagher's reliance on Rule 408 is misplaced both because
it mistakes a rule of evidence for a rule of pleading and
because it is based on an erroneous interpretation of the rule
itself.

A motion to dismiss for failure to state a claim tests the
legal sufficiency of the complaint.  It does not ordinarily
permit an assessment of the evidence supporting the complaint,
which must instead be addressed at a later stage in the
proceedings.  See DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 113

(2d Cir. 2010); Rader v. ShareBuilder Corp., 772 F. Supp. 2d 599, 604-05 (D. Del. 2011); Abercrombie & Fitch Co. v. Fed. Ins. Co., No. 2:06-CV-831, 2008 WL 656029, at *5 (S.D. Ohio Mar. 11, 2008). In short, Gallagher's attempt to invoke Rule 408 fails because it is premature.

More fundamentally, Gallagher's argument also fails because it is based on a misreading of Rule 408. Although Rule 408 bars evidence of settlement negotiations to prove or disprove a claim under negotiation, it does not bar the admission of such evidence for other purposes. See Fed. R. Evid. 408(b) (evidence of settlement negotiations may be admitted "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution"); see Vrico v. Pernell Oil Co., 708 F.2d 852, 854-55 (1st Cir. 1983); Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 770 (10th Cir. 1997); Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 510 (2d Cir. 1989).

Here, defendants argue that they will seek to use evidence of settlement negotiations to prove Gallagher's liability for a separate cause of action – an alleged violation of the CPA that arose during the negotiations. See Doc. No. 26 at 3-4. In similar circumstances, other courts have admitted settlement

negotiation evidence to prove liability for separate claims that arose from discussions to settle a preexisting dispute.  See Starter Corp. v. Converse, Inc., 170 F.3d 286, 294 (2d Cir. 2001) (settlement negotiation evidence admissible to support separate claim of equitable estoppel arising from negotiations); Carney v. Am. Univ., 151 F.3d 1090, 1095-96 (D.C. Cir. 1998) (settlement negotiation evidence admissible to prove "entirely separate wrong" from claim under negotiation); Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc., 407 F. Supp. 2d 401, 403 (D. Conn. 2006) (settlement negotiation evidence admissible "to the extent [it] constitute[s] an additional wrong") (internal quotation omitted); Carolina Indus. Prods. v. Learjet, Inc., 168 F. Supp. 2d 1225, 1230 (D. Kan. 2001) (settlement negotiation evidence admissible to support separate claim of fraudulent inducement arising from negotiations).

I find the reasoning that underlies these rulings persuasive.  Thus, I reject Gallagher's argument that Rule 408 bars the defendants from relying on evidence of settlement negotiations to prove their CPA counterclaim.[2]

---

[2]  Gallagher argues in the alternative that any references in the CPA counterclaim to settlement negotiations should be stricken pursuant to Federal Rule of Civil Procedure 12(f), which permits a court to strike an allegation from a pleading if it qualifies

**B.     The CPA as an Alternative to a Malicious Prosecution Claim**

Gallagher also argues in the alternative that the CPA

counterclaim is "essentially [a] malicious prosecution claim[]

that cannot be brought until the underlying action is resolved."

Doc. No. 20-1 at 3 (internal quotation omitted).  Whether the

alleged facts that underlie the counterclaim could also support

a different claim under common law, however, is beside the

point.  The CPA "creates new statutory rights" that are distinct

from common law causes of action, even if the same facts could

support both types of claims.  See Hair Excitement, Inc. v.

L'Oreal U.S.A., 158 N.H. 363, 368 (2009).  CPA claims can be,

and often are, brought in tandem with separate common law claims

---

as "redundant, immaterial, impertinent, or scandalous."  See
Fed. R. Civ. P. 12(f); Doc. No. 20-1 at 2.  Although a few
courts have reached a contrary conclusion, I agree with the
majority of courts that have addressed the question that Rule
12(f) does not permit allegations in a complaint or counterclaim
to be stricken solely because they are based on potentially
inadmissible evidence.  See, e.g., Mobile Conversions, Inc. v.
Allegheny Ford Truck Sales, No. 2:12-cv-1485, 2013 WL 1946183,
at *6-*7 (W.D. Pa. May 9, 2013); TriQuint Semiconductor, Inc. v.
Avago Techs. Ltd., 83 Fed. R. Evid. Serv. 402, No. CV-09-01531-
PHX-JAT, 2010 WL 3034880, at *4 (D. Ariz. Aug. 3, 2010); Steak
Umm Co. v. Steak 'Em Up, Inc., No. CV-09-2857, 2009 WL 3540786,
at *3 (E.D. Pa. Oct. 29, 2009); PTR, Inc. v. Forsythe Racing,
Inc., No. 08 C 5517, 2009 WL 1606970, at *4 (N.D. Ill. June 9,
2009); Eppenger-Pollard v. Lock Joint Tube, Inc., No. 3:05-CV-
116RM, 2005 WL 2216900, at *2 (N.D. Ind. Sept. 9, 2005).
Accordingly, I decline Gallagher's request to strike all
references to settlement negotiations from the counterclaim.

based on the same underlying facts.  See, e.g., George v. Al
Hoyt & Sons, Inc., 162 N.H. 123, 126-27 (2011) (CPA and breach
of contract claims brought simultaneously).  And of particular
importance here, in Hair Excitement, Inc. v. L'Oreal USA, the
New Hampshire Supreme Court held that rules that would otherwise
govern an unraised and distinct common law claim do not apply to
a CPA claim merely because the same underlying facts could
support both claims.  See 158 N.H. at 369-70.  Under the court's
reasoning in Hair Excitement, therefore, the termination of
litigation element that would apply in a malicious prosecution
claim does not govern defendants' CPA claim merely because the
facts alleged in support of the claim might also support a
legally distinct malicious prosecution claim.  See id.

     To the extent that Gallagher argues that abusive litigation
practices can never support a CPA claim, I disagree.  I
recognize that the New Hampshire Supreme Court has not yet
decided whether the CPA extends to abusive litigation practices.
See Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 677
(2013) ("Assuming, without deciding, that unfair litigation
tactics fall within the scope of the CPA . . . .") (emphasis
added).  Despite a lack of clear guidance from the New Hampshire
Supreme Court, however, both the CPA's plain text and persuasive
authority from other jurisdictions counsel against creating a

new exception from CPA liability.

As codified by Section 358-A:2 of the New Hampshire Revised Statutes, the CPA broadly proscribes "any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. Ann. § 358-A:2. I see no reason why abusive litigation practices could not rise to this threshold under certain factual circumstances, and nothing in § 358-A:2 suggests otherwise. See id. Furthermore, although the CPA expressly exempts certain types of transactions from its ambit, abusive litigation practices are not included on this list. See N.H. Rev. Stat. Ann. § 358-A:3. Thus, I can find no basis in the CPA's plain text to conclude that CPA liability does not extend to abusive litigation practices.

Beyond the plain text of the CPA, other persuasive authority also suggests that abusive litigation practices can qualify as "unfair or deceptive act[s] or practice[s] in the conduct of any trade or commerce." See N.H. Rev. Stat. Ann. § 358-A:2. The CPA provides "that in any action or prosecution [under the CPA,] the courts may be guided by the interpretation and construction given Section 5(a)(1) of the Federal Trade Commission Act . . . by the Federal Trade Commission and the federal courts." N.H. Rev. Stat. Ann. § 358-A:13. The Federal Trade Commission has brought enforcement actions based on

abusive litigation practices, and other federal courts have held
that Section 5 the Federal Trade Commission Act permits such
actions.  See Spiegel, Inc. v. FTC, 540 F.2d 287, 292-93 (7th
Cir. 1976); cf. FTC v. Sperry & Hutchinson Co., 405 U.S. 233,
244 (1972) (holding that legally proper practice can still
violate Federal Trade Commission Act).  In addition, the New
Hampshire Supreme Court has sometimes turned to Massachusetts
courts for guidance when faced with an interpretative question
regarding the CPA because the Massachusetts consumer protection
statute is similar to the CPA.  See Milford Lumber Co. v. RCB
Realty, Inc., 147 N.H. 15, 17-18 (2001).  Both state and federal
courts in Massachusetts agree that the closely similar
Massachusetts consumer protection statute can support claims
based on abusive litigation practices.  See Refuse & Env'l Sys.,
Inc. v. Indus. Servs. of. Am., Inc., 932 F.2d 37, 43 (1st Cir.
1991); Datacomm Interface, Inc. v. Computerworld, Inc., 489
N.E.2d 185, 197-98 (Mass. 1986); Schubach v. Household Fin.
Corp., 376 N.E.2d 140, 142 (Mass. 1978).  This authority further
persuades me that CPA liability can extend to abusive litigation
practices, and I decline to hold otherwise in the absence of
clear direction from the New Hampshire Supreme Court.[3]

---

[3] I recognize that one New Hampshire Superior Court judge has
dismissed a CPA counterclaim on the theory that Gallagher

## IV.   <u>CONCLUSION</u>

For these reasons, I deny Gallagher's motion to dismiss the CPA counterclaim (Doc. No. 20).

SO ORDERED.

<u>/s/Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

February 24, 2015

cc:   Ross Kenneth Krutsinger, Esq.
      Frank B. Mesmer , Jr., Esq.
      Laura L. Carroll, Esq.
      Zachary Rush Gates, Esq.

---

advocates here.  <u>See</u> <u>GT Crystal Systems, LLC v. Khattak</u>, No. 217-2011-CV-332, slip op. at 14 (N.H. Super. Ct. Jan. 30, 2012) (dismissing CPA counterclaim because it was "better characterized as a malicious prosecution claim").  For the reasons I have explained, however, I disagree with this conclusion.  CPA and common law claims are distinct causes of action, and it is not for a court to decide how a claim is best characterized.  Moreover, another Superior Court judge has taken the opposite view.  <u>See</u> <u>N.H. Ball Bearings, Inc. v. Jackson</u>, No. 06-E-106, 2006 N.H. Super. LEXIS 45, at *8-*9 (N.H. Super. Ct. Nov. 20, 2006) (holding that allegations of misconduct during settlement negotiations supported a CPA counterclaim).  No clear consensus has emerged among the New Hampshire lower courts, therefore, regarding CPA liability for abusive litigation practices.

11